In the Matter of the Petition of WILLIAM A. GOODHART to Prove the Last Will and Testament of JOSEPHINE A. MAXWELL, Late of the County of Kings, Deceased.

EMMA F. BOLTZ, Residuary Legatee, Appellant; JOSEPHINE MAXWELL KENNEDY, Contestant, Respondent.

*(Supreme Court, Appellate Division, Second Department, June 2, 1916.)*

WILL—PROBATE—EVIDENCE—PROOF NOT ESTABLISHING UNDUE INFLUENCE.

Appeal from a decree of the Surrogate's Court refusing probate to the alleged will of a person who had been a chronic alcoholic and which left legacies to persons not of her blood, but who had befriended her, upon a finding by a jury that the instrument was procured by undue influence.

Evidence examined, and *held*, insufficient to establish undue influence and that the will should be admitted to probate.

APPEAL by Emma F. Boltz, residuary legatee, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 19th day of July, 1915, and also from an order entered in said office on the same day denying her motion for a new trial.

Edward G. Nelson, for the appellant.

Abraham Kaplan (Maurice A. Pompan with him on the brief), for the respondent.

CARR, J.— This is an appeal from a decree of the Surrogate's Court in Kings county refusing probate to an instrument as the last will and testament of Josephine A. Maxwell, deceased. There is really nothing involved on this appeal but a question of fact — rather, were there facts enough to raise an issuable question for the jury — I suppose that may be termed more properly a question of law resting upon an examintion of the

facts in evidence.  The will of the decedent, after making a few minor bequests, bequeathed the sum of $1,000 to one William A. Goodhart, an attorney who drew the will, and the residue of the estate to a Mrs. Boltz.  Neither of these legatees was of the blood of the decedent.  She was an unmarried woman.  Her only or nearest relatives were nephews and nieces, children of a deceased or long-missing brother, presumably deceased.  Her near relatives filed objections to the probate of the alleged will, the chief grounds alleged being lack of testamentary capacity on the part of the testatrix and that the will was procured by " undue influence."  These two questions were submitted to the jury in the Surrogate's Court, under a charge of unusual lucidity and legal correctness.  The jury found that the alleged testatrix possessed testamentary capacity but that her will was the result of " undue influence " on the part of some person or persons unspecified.  The executor and legatee, Goodhart, has not appealed.  The residuary legatee, Boltz, contends that there was no proof of " undue influence " on her part, and that, though there was such proof as to Goodhart, the will should not have been rejected *in toto,* but only as to Goodhart, in which event she would take, as residuary legatee, the apparent bequest to Goodhart.  She contends further that there was not sufficient proof to make an issuable question for the jury as to " undue influence " on the part of anybody.  While the jury found against the contestants on the question of the lack of testamentary capacity, we may and should consider the evidence on that question so far as it may be illustrative or material on the question of the mental condition of a decedent who was said to have been " unduly influenced " in the making of a will.  The evidence in the case is that this unfortunate woman was a chronic alcoholic.  She had been restrained several times of her liberty on that account.  She had a small estate, consisting entirely of the income on a few thousand dollars held in trust with the right of making a testamentary disposition of the

principal.. The income was meagre, and her last days were distressing even from a financial viewpoint alone. She had little money to clothe and feed herself properly. She took a "furnished room." with the appellant Boltz. The latter was kind to her, let us grant from selfish motives. At least she recognized the decedent as a human being, in need of kindness and apparent sympathy. I can see nothing in the record that would suggest that some testamentary recognition of Mrs. Boltz by the decedent would have been startling in any way. The legacy to Goodhart required explanation, as he was ' the decedent's attorney and the draftsman of the will. I think the explanation given was fully adequate. He had been her attorney for years; it was through his professional activities that the decedent's estate had been procured through the adjustment of a legal controversy. He had exercised an interest ·in her welfare until the time of her death. As to Mrs. Boltz, the residuary legatee, there is, in my opinion, no evidence whatever of " undue influence." Doubtless, when she discovered that the decedent had a small estate, she was consistently and deliberately kind to the decedent, but that is not forbidden by the law. The decedent as a continuous alcoholic was not attractive to her relatives, and naturally so, but the law does not give them absolutely, or even presumptively, a right to her estate against testamentary provisions to the contrary. The re-
·such stock. Such stock of the new companies, so distributed, lations between uncles or aunts and nephews and nieces are very frequently lax or indifferent, and the testimony in this case shows that there was no particular intimacy between the decedent and the contestants.

I recommend that the decree of the Surrogate's Court of Kings county and the order denying a motion for a new trial be reversed, with costs, and that the will of the decedent be admitted to probate.

THOMAS and RICH, JJ., concurred; JENKS, P. J., and PUTNAM, J., dissented.

Decree of the Surrogate's Court of Kings county and the order denying motion for a new trial reversed, with costs, and will of the decedent admitted to probate. Proposed order and findings to be settled before Mr. Justice CARR.